UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ANTHONY J. SEGRETO,

                                    Plaintiff,                        **REPORT AND RECOMMENDATION**

   -against-                                          18-cv-3032 (JS)(SIL)

TOWN OF ISLIP, SUFFOLK COUNTY, and
NEW YORK STATE DEPARTMENT of
ENVIORNMENTAL CONSERVATION,

                                  Defendants.

------------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

      By Complaint filed on May 23, 2018, *pro se* plaintiff Anthony J. Segreto ("Segreto" or "Plaintiff") commenced this action against the New York State Department of Environmental Conservation (the "NYSDEC"), the Town of Islip (the "Town") and Suffolk County (the "County") (collectively, "Defendants"), seeking relief under 42 U.S.C. § 1983 for constitutional violations related to his property located at 135 Bluepoint Road in Oakdale, New York (the "Property"). *See* Complaint ("Compl."), Docket Entry ("DE") [1]. Presently before the Court, on referral from the Honorable Joanna Seybert are Plaintiff's motions: (i) for a declaratory judgment that the Property is not subject to regulations promulgated by the NYSDEC, *see* DE [25]; (ii) to compel the Town to remove three pipes from the Property, *see* DE [27]; (iii) for monetary damages and injunctive relief against the Town in connection to flooding and a sinkhole on the Property, *see* DE [28]; and (iv) to enjoin Defendants from

dumping storm water onto the Property, *see* DE [44],[1] and Defendants' motions to dismiss the Complaint, *see* DEs [29], [30], [32].  For the reasons set forth below, the Court respectfully recommends that Segreto's motions be denied and that Defendants' motions to dismiss be granted.

## I.  BACKGROUND[2]

Plaintiff purchased the Property in February 2005.  *See* Compl., 9 ¶ 10.[3] Segreto alleges that for the past 13 years, the Town and the County—with permission from the NYSDEC—have been dumping storm sewer water onto the Property without obtaining easements and creating a "Storm Sewer Water Recharge Charge Basin" on the Property, which has resulted in flooding and destruction of the Property, including the erosion of two acres of dry land.[4]  *See id.* at 5, 8, 9 ¶ 9.  In October 2005, the Property flooded due to the County's failure to maintain certain lots south of the Property.  *See id.* at 5.  Then, in April 2018, a "treacherous" sinkhole, appeared on the Property, which was caused by the rupture of one of three pipes that the Town had buried on the Property without an easement.  *See id.* at 14 ¶ 6; *see also* Order to Show Cause, DE [8].  The County has also contributed to flooding through its creation of a "Toxic Recharge Basin," which empties onto the Property.  *See* Compl., 5.

---

[1] As discussed further below, Plaintiff's motions are simply reiterations of the causes of action and relief requested in the Complaint.

[2] As the parties' familiarity with the underlying facts and extensive procedural history is presumed, the Court sets forth only background material that is directly relevant to the instant motions.

[3] Citations to the Complaint are by page number and, where available, paragraph number.

[4] The erosion has resulted from a combination of freshwater storm sewer dumping and salt tide water, which has created "avulsions" and has led to the destruction of vegetation on the Property. *See* Compl., 9 ¶ 10.

Plaintiff further alleges that the NYSDEC's designation of the Property as "wetlands" under the New York Tidal Wetlands Act (the "Tidal Wetlands Act") is erroneous, as the land has been artificially transformed from dry land to wet land due to the Town and the County's dumping of water onto the Property. *See id.* at 10-11 ¶¶ 16, 18. Additionally, under the pretense that it had authority to regulate the Property, the NYSDEC removed a "storm-surge retaining wall" in August 2012, and as a result, the Property flooded during Hurricane Sandy. *See id.* at 10 ¶ 15, 14 ¶ 13. Moreover, Segreto alleges that the NYSDEC has violated Plaintiff's constitutional rights by, among other things, entering the property "Guns Drawn, without a court order," threatening to arrest Segreto, stopping by the Property "on a preplanned search weekly–then bi-monthly–then monthly for years," fining Plaintiff for "[p]utting a shovel" in the soil, photographing the Property and "[e]stablish[ing] a neighborhood vigilante . . . to spy on [the] [P]roperty every day" and issuing or threatening to issue tickets to Segreto's guests and anyone hired to work on the Property. *See id.* at 10 ¶¶ 15, 17. Finally, Plaintiff alleges that the NYSDEC has discriminated against him by refusing to approve his application for a bulkhead permit to protect the Property, while at the same time allowing similarly situated neighbors to build bulkheads. *See id.* at 11 ¶ 21.

There have been several actions and proceedings in various courts pertaining to the Property and the parties.

### A. **The State Court Actions**

Initially, the NYSDEC commenced an administrative action against Segreto in 2007, charging him with violating the Tidal Wetlands Act by clearing vegetation and placing "fill" in a regulated tidal wetland, without obtaining the required NYSDEC permit. *See* Declaration of Assistant Attorney General Max Shterngel in Support of Motion to Dismiss by Defendant New York State Department of Environmental Conservation, ("Shterngel Decl."), DE [32-2], Exhibit ("Ex.") A, 10. The NYSDEC sought an order without a hearing, under 6 N.Y.C.R.R. 622.12, which the Commissioner of the NYSDEC granted on February 1, 2008, pursuant to the recommendation of Administrative Law Judge ("ALJ"), Mark D. Sanza. *See id.* at 2-6. The February 1, 2008 Order adopted ALJ Sanza's findings that the NYSDEC's "unrefuted documentary evidence," as well as "personal observations, written record of inspection, and color photographs" confirmed the "presence of regulated tidal wetlands and tidal wetland adjacent areas" on the Property and thus confirmed that the Property is subject to the Tidal Wetlands Act. *See id.* at 23.

By Notice of Petition dated March 13, 2008, Plaintiff and his wife commenced an action against Defendants[5] in the Supreme Court of the State of New York, County of Suffolk (the "Suffolk County Supreme Court" or "Supreme Court") to challenge the Order and obtain relief from flooding on the Property pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"). *See* Shterngel Decl., Ex. B. The Supreme Court dismissed the action on July 22, 2008, finding that an Article 78

---

[5] This action also named two defendants who are not named in the current action.

proceeding was not the proper avenue for the relief sought, and in any event, that Segreto had "failed to identify any basis to disturb" the NYSDEC's determination that the Property was subject to the Tidal Wetlands Act. *Id.* at 2. Plaintiff did not appeal the Supreme Court's decision, but instead brought a second Article 78 proceeding on August 6, 2008, this time against the Commissioner of the NYSDEC only, to again challenge the February 1, 2008 Order. *See* Shterngel Decl., Ex C. The NYSDEC moved to dismiss on *res judicata* grounds, and the Supreme Court granted the NYSDEC's motion on September 18, 2008. *See id.* Segreto appealed, and on February 2, 2010, the Appellate Division, Second Department affirmed the trial court's second decision, noting that the Supreme Court's first decision dismissing Plaintiff's Article 78 proceeding, "mandated dismissal of [Segreto's] claims in the [second] proceeding under the doctrine of *res judicata.*" *See* Shterngel Decl., Ex D, 2.

While awaiting the Second Department's decision, Plaintiff and his wife commenced yet another action, on February 4, 2009, in the Suffolk County Supreme Court against the Town and the County, realleging claims regarding flooding of the Property and further claiming that the County was artificially diverting water onto the Property though a faulty sewer drainage system, and the Town and the County had committed theft by claiming ownership of a body of water on the Property known as Deer Lake. *See Segreto v. Town of Islip*, No. 12-cv-1961, 2013 WL 572435, at *3 (E.D.N.Y. Feb. 12, 2013) ("*Segreto I*") (summarizing the State Court proceedings). The Town and the County separately moved for summary judgment. *Id.* On March 14, 2011, the Supreme Court granted the County's motion for summary judgment and

further denied Plaintiff's motion for a judgment declaring that Plaintiff owned Deer Lake, upon a finding that the Property deed did not include Deer Lake. *See* Declaration of Leonard G. Kapsalis ("Kapsalis Decl."), DE [30-1], Ex. C.   On November 11, 2011, the Supreme Court granted the Town's motion for summary judgment "holding that the Town was immune from claims regarding negligent design of the sewer system, that claims regarding flooding from saltwater were time barred, and that [Segreto's] claims with respect to Deer Lake were without merit because Plaintiff[] did not have an ownership interest in it." *See Segreto I*, 2013 WL 572435, at *3.

After the Second Department issued its decision regarding the February 1, 2008 Order, the NYSDEC commenced an action against Plaintiff in Suffolk County Supreme Court to enforce the Order.  *See* Shterngel Decl., Ex. F.  Segreto responded by challenging the jurisdiction of the NYSDEC to regulate the Property.  Shterngel Decl., Ex. G, 3.  Noting that it was "bound by the principles of *res judicata* and collateral estoppel," the court found that it had already decided Plaintiff's challenges to the February 1, 2008 Order and that Segreto was barred from re-litigating decided issues.  *Id.*  Thus, the Supreme Court issued a preliminary injunction on August 15, 2012, which restrained Plaintiff from certain activities on his Property and granted the NYSDEC access to Segreto's Property to ensure compliance.  *See id* at 2.

On May 20, 2014, Plaintiff moved in the Suffolk County Supreme Court for a preliminary injunction authorizing him to undertake construction on the Property without "running afoul of NYSDEC rules and regulations."  *See* Shterngel Decl., Ex.

6

H, 6.  The Supreme Court denied Segreto's motion on November 24, 2014, finding that it amounted "to little more than an impermissible collateral attack on the court's August 15, 2012 order, which specifically enjoined him from conducting such activities on the [P]roperty except pursuant to a [tidal wetlands] permit." *Id.*  The Supreme Court further granted the portion of the NYSDEC's cross-motion for summary judgment that sought enforcement of the February 1, 2008 Order, noting that "[t]o the extent . . . that Segreto continues to dispute the designation of his property as 'wetlands' and claims that the [P]roperty is not subject to the Tidal Wetlands Act . . . it would appear that the issue has already been conclusively resolved against him."  *Id.* at 4, n.3.  Plaintiff did not appeal the Supreme Court's decision.  *See* Shterngel Decl. ¶ 11.

### B. <u>The First Federal Court Action</u>

In May 2012, Plaintiff and his wife commenced an earlier action in this court against Defendants,[6]  alleging:  (i) injury by the state court in the 2008-2011 proceedings; (ii) that the Town and the County had violated the Takings Clause by wrongfully flooding the Property and transferring ownership of Deer Lake; (iii) that the NYSDEC had violated the Takings Clause by wrongfully flooding the Property, denying Plaintiff procedural due process and acting arbitrarily and capriciously in regulating the Property; (iv) that the NYSDEC had conducted illegal searches on the Property; (v) that the NYSDEC had engaged in age discrimination; (vi) that the

---

[6] Two additional defendants—NYSDEC employees in both their individual and official capacities—were named in the 2012 action, but are not named in the current action.  Accordingly, the Court does not address the resolution of claims raised against these two NYSDEC employees and only addresses the portions of the May 2012 action that are relevant to Defendants in this action.

NYSDEC had potentially violated the Racketeer Influenced and Corrupt Organizations Act of 1970 ("RICO"); and (vii) that Defendants had conspired to violate Segreto's constitutional rights, including his right to equal protection." *Segreto I*, 2013 WL 572435, at *3. On February 12, 2013, the court dismissed with prejudice: (i) claims that Segreto was injured by the actions and judgments in the state court proceedings; (ii) § 1983 claims for monetary damages against the NYSDEC, including claims of a Fourth Amendment illegal search violation; (iii) claims regarding any alleged age discrimination; and (iv) claims that the Town and the County violated the Takings Clause. *Id.* at *14. The court further dismissed the remaining claims without prejudice and with leave to file an amended complaint. *Id.* at *14-*15. Finally, the court ordered Plaintiff to show cause as to why his claims of equal protection and substantive due process against the NYSDEC should proceed. *Id.* at *15.

Segreto and his wife filed an amended complaint on March 28, 2013, which asserted "the same basic factual allegations," as the original complaint. *Segreto v. Town of Islip*, No. 12-cv-1961, 2014 WL 737531, at *3 (E.D.N.Y. Feb. 24, 2014) ("*Segreto II*"). The amended complaint also repleaded causes of action for: (i) violations of the Takings Clause against the NYSDEC based on the NYSDEC's flooding of the Property, *see id.* at *8; (ii) violations of the Fourth Amendment against the Town and the County based on their warrantless searches and "trespass" onto the Property, *see id.* at *8-*9; (iii) violation of procedural due process against the NYSDEC, *see id.* at *3; and (iv) conspiracy against all Defendants, *see id.* Plaintiff

also filed an Order to Show Cause, which, among other things, asked the court to reconsider its prior dismissal order on the grounds that the court had "misunderstood the facts in this case and that the [c]ourt is clueless." *Id.* at *3. The court found that, aside from "blanket assertions that 'res judicata and collateral estoppel is not an issue in the taking of land,'" Segreto had not presented any case law or facts that the court had overlooked. *Id.* at *4. Accordingly, the court denied Plaintiff's motion for reconsideration. *Id.* The Order to Show cause further alleged: (i) a substantive due process claim against the NYSDEC, *see id.* at *4-*5; and (ii) an equal protection claim against the NYSDEC based on the NYSDEC's "selective enforcement" against Segreto of regulations pursuant to the Tidal Wetlands Act, *see id.* at *5-*8. Defendants separately moved to dismiss the amended complaint. The court granted the Town's and the County's respective motions to dismiss the Fourth Amendment and conspiracy claims against them and terminated them as defendants in the action. *See id.* at *9-*11. The court further dismissed Plaintiff's Takings Clause, substantive due process and conspiracy claims against the NYSDEC with prejudice. *See id.* at *11. Finally, "in the interest of justice," the court granted Segreto "one final opportunity" to state claims against the NYSDEC based on denial of equal protection and denial of procedural due process. *See id.* at *10.

Segreto did not file a third amended complaint, and the NYSDEC moved to dismiss Plaintiff's remaining causes of actions set forth in the amended complaint for denial of equal protection and procedural due process. *Segreto v. New York State Dep't of Envtl. Conservation*, No. 12-cv-1961, 2015 WL 729733, at *1 (E.D.N.Y. Feb.

18, 2015) ("*Segreto III*").  The court dismissed all of Segreto's claims against the NYSDEC with prejudice.  *Id.* at *4-*8.

### C. <u>The Current Action</u>

Plaintiff did not appeal any of the court's dismissal orders, and instead, on May 23, 2018, filed a new lawsuit against the same defendants as in the previous federal and state court actions.  Segreto alleges that the Town and the County violated the Takings Clause of the Fifth Amendment by illegally dumping storm sewer water onto the Property without obtaining easements and that the Town is responsible for a sinkhole on the Property that was created by pipes that the Town buried on the Property without an easement.  *See* Compl., 5, 8, 16.  Plaintiff further alleges that the NYSDEC:  (i) violated the Takings Clause by allowing the Town and the County to illegally dump onto the Property, denying Segreto procedural due process and acting arbitrarily and capriciously in regulating the Property; (ii) violated the Fourth Amendment by conducting illegal searches of the Property; (iii) violated the Equal Protection Clause of the Fourteenth Amendment by issuing permits to Segreto's neighbors to build bulkheads on their properties, while denying Plaintiff's applications for such permits; and (iv) violated the Seventh and Eighth Amendments.[7]  *See id.* at 4, 8-11.  In addition to his Complaint, Segreto has filed four motions: (i) for a declaratory judgment that the Property is not subject to regulations promulgated by the NYSDEC, *see* DE [25]; (ii) to compel the Town to remove three pipes from the Property, *see* DE [27]; (iii) for  monetary damages and injunctive relief

---

[7] As discussed further below, Plaintiff does not allege any facts in support of his Seventh and Eighth Amendment claims.

against the Town in connection to flooding and a sinkhole on the Property, *see* DE [28]; and (iv) to enjoin Defendants from dumping storm water onto the Property, *see* DE [44].

Defendants now each move to dismiss the Complaint on the grounds that this Court lacks jurisdiction, Plaintiff's claims are precluded by the doctrines of *res judicata* and collateral estoppel and Segreto has otherwise failed to state a claim. *See* Memorandum of Law in Support of Motion to Dismiss by Defendant, Town of Islip ("Town Memo"), DE [29-5], 6-8; Defendant Suffolk County's Memorandum of Law in Support of Motion to Dismiss ("County Memo"), DE [30-7], 6-12; Memorandum of Law in Support of Motion to Dismiss by Defendant New York State Department of Environmental Conservation ("NYSDEC Memo"), DE [32-1], 12-21.

## II.  LEGAL STANDARDS

### A.  <u>Fed. R. Civ. P. 12(b)(1)</u>

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), a federal court must dismiss a claim when it lacks jurisdiction over the subject matter of the action. *See* Fed. R. Civ. P. 12(b)(1); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). The party asserting subject matter jurisdiction has the burden to prove the Court's jurisdiction by a preponderance of the evidence. *See Vailette v. Lindsay*, No. 11-cv-3610, 2014 WL 4101513, at *3 (E.D.N.Y. Aug. 18, 2014).

In deciding a motion to dismiss for lack of subject matter jurisdiction, the court must assume that all factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *C.K. v. Bd. of Educ. of the Westhampton Beach Sch. Dist.*, 185 F. Supp. 3d 317, 324 (E.D.N.Y. 2016). Further, the court may refer to evidence outside the pleadings, such as affidavits, to resolve the jurisdictional issue. *Forbes v. State Univ. of New York at Stony Brook*, 259 F. Supp. 2d 227, 231-32 (E.D.N.Y. 2003).

### B. <u>Fed. R. Civ. P. 12(b)(6)</u>

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1975 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), as in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the court must accept as true all allegations in the complaint and draw all inferences in the non-moving party's favor. *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)). Nevertheless, "threadbare recitals of the elements of a cause of action" that are

supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted); *see Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). The court may consider only the factual allegations in the complaint, documents incorporated by reference into the complaint, matters of which judicial notice may be taken and documents that are integral to the complaint and upon which the complaint relies heavily. *Lockwood v. Town of Hempstead*, No. 16-cv-3756, 2017 WL 3769253, at *2 (E.D.N.Y. Aug. 28, 2017) (citation omitted).

### C. *Pro Se* Pleadings

It is well-established that pleadings filed by *pro se* plaintiffs, such as Segreto, are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173, 176 (1980); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) ("A document filed *pro se* is to be liberally construed . . . and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted). The Second Circuit has held that a court reviewing a *pro se* complaint must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 145-46 (2d Cir. 2002) (internal alterations omitted); *see also Colorado Capital v. Owens*, 227 F.R.D. 181, 193 (E.D.N.Y. 2005) (holding that a court must

"make reasonable allowances so that a *pro se* plaintiff does not forfeit rights by virtue of her or his lack of legal training") (internal quotation marks and citations omitted). Further, courts must afford *pro se* plaintiffs "special solicitude" before granting motions to dismiss. *Kendall v. Caliber Home Loans, Inc.*, 198 F. Supp. 3d 168, 170 (E.D.N.Y. 2016) (quoting *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013)). However, the court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Ogunmokun v. Am. Educ. Servs.*, No. 12-cv-4403, 2014 WL 4724707, at *3 (E.D.N.Y. Sept. 23, 2014) (internal quotation marks and citation omitted).

## III. DISCUSSION

As an initial matter, the Court address Plaintiff's four motions. *See* DEs [25], [27], [28], [44]. Although Segreto's filings have been docketed as motions, they simply reassert the causes of actions that Plaintiff alleged in his Complaint, as discussed further below. Segreto did not obtain leave of the Court to supplement the Complaint with these submissions, as required by Fed. R. Civ. P 15(a)(2) or 15(d). However, the Second Circuit has cautioned against elevating "form over substance" in *pro se* cases. *See Bradley v. Coughlin*, 671 F.2d 686, 690 (2d Cir. 1982); *see also Santiago v. C.O. Campisi Shield No. 4592*, 91 F. Supp. 2d 665, 671 (S.D.N.Y. 2000) (noting that "the Second Circuit has repeatedly ordered the district courts to bend the procedural rules for the benefit of *pro se* litigants"). Accordingly, rather than disregarding Plaintiff's submissions because they were not properly filed with leave of the Court as supplements to the Complaint, the Court considers them both as motions for relief

and as opposition to Defendants' motions to dismiss, to the extent they are responsive to Defendants' motions.

Plaintiff's first submission, filed on September 13, 2018 as a "Motion to Dismiss Wetlands Claim and Fines Based on Chevron Deference Review," seeks a declaratory judgment that the Property is not subject to the Tidal Wetlands Act, as previously determined by the NYSDEC. *See* DE [25], 1-3. Plaintiff alleges that the NYSDEC has been "using 'false authority'" to designate the Property as wetlands, namely by claiming that Deer Lake is on the Property, when in fact, the Property deed excludes Deer Lake. *Id.* at 5. Segreto further urges the Court to "acknowledge that Deer Lake has a history from 1880 to 2005 as 'dry land'" and is nothing more than a "seasonal rain puddle where deer drink." *Id.* Plaintiff's Complaint similarly alleges that the NYSDEC has been using "false authority" to label the Property as wetlands, *see* Compl., 9 ¶ 13, and seeks relief in the form of, *inter alia*: (i) removal of all wetlands fines issued by the NYSDEC; and (ii) reinstatement of Deer Lake as a "seasonal pond" as indicated in the 1909 survey of the Property. *Id.* at 14 ¶¶ 1, 3. The only substantive difference between Segreto's Complaint and this September 13 submission is Plaintiff's additional request that the Court "evaluate the NYSDEC's position via Chevron Law procedures." *See* DE [25], 5. *Chevron* review of agency interpretations of statutes, however, "applies only to regulations promulgated pursuant to congressional authority," and thus is inapplicable to a review of the NYSDEC's interpretation of the Tidal Wetlands Act, which is a statute created and

regulated by New York State. *See Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649, 110
S. Ct. 1384, 1391 (1990) (internal quotation marks and citations omitted).

Segreto's second submission, dated September 28, 2018, and filed as a "Motion
to Compel:  Remover [sic] or Cap Three Hidden 'Buried Trojan Horses,'" seeks
removal or permanent "capping" of three pipes that the Town created to illegally
dump storm sewer water onto the Property.  *See* DE [27], 3.  Like the Complaint, this
submission details the Town's use of pipes[8] to flood the Property and seeks the same
relief already outlined in the Complaint—the removal of all causes of flooding to the
Property.  *Compare* DE [27], 1, 5-8 *with* Compl., 14 ¶¶ 4, 9-11.

The third submission, filed on October 1, 2018 as a "Motion to Compel:
Reinstate North-west Corner of PHLE" seeks damages to "reinstate" the north-west
corner of the Property "as planned by" the Town's Engineer, David Janover, in 2008
and alleges that the Town has neglected to install a storm drainage corner at a "triple
intersection of Ludlow Way, Lakeside Drive & Lincoln Road," which has resulted in
yearly flooding of this intersection and caused hazardous conditions.  *See* DE [28], 1.
Plaintiff further alleges that the Town has created a sinkhole on the Property through
three buried pipes.  *See id.* at 1-2.  Segreto seeks $100,000.00 for the flooding at the
intersection and further seeks an injunction requiring the Town to remove the hidden
pipes and fix the sinkhole, and $180,000.00 for the Town's failure to fix the sinkhole
since it appeared in April 2018.  *Id.* at 2.  Although articulated in different ways, the

---

[8] The Complaint does not use the term "Buried Trojan Horses" to refer to the pipes, but instead
references "broken conduit running west to east and dumping storm sewer run-off [onto the Property]
. . . [and] caus[ing] a treacherous sink hole . . ."  *See* Compl., 14 ¶ 6.

16

allegations in the Complaint refer to the same facts outlined in the "Motion to Compel:  Reinstate North-west Corner of PHLE."  With respect to the storm drainage corner, the Complaint refers to a 2008 meeting with Dave Janover, in which Plaintiff "briefed" him on the Property's problems, and seeks punitive damages from the Town for the restoration costs to reinstate the Property to its condition prior to Defendants' harm.  *See* Compl., 15 ¶ 17.  Further, as mentioned above, the Complaint similarly alleges the existence of a sinkhole created by buried pipes and seeks various forms of relief related to the pipes and sinkhole, including an injunction requiring the Town to fix the sinkhole.  *See, e.g.*, Compl., 16 ("I need immediate court action with the Sink Hole Problem.").

Finally, Segreto's fourth submission, dated December 12, 2018 and filed as a "Motion to Compel," like the Complaint and the "Motion to Compel:  Remover [sic] or Cap Three Hidden 'Buried Trojan Horses,'" DE [27], seeks to enjoin Defendants from dumping storm water onto the Property and further seeks an injunction requiring Defendants to remove three buried pipes and restore the Property "to deed history as recorded in Suffolk County Deed Record South Side, Oakdale, NY dated January 1909."  *See* DE [44], at 2.  This "Motion to Compel" further asks the Court to "uphold the US EPA's MS4 (Municipal Separate Storm Sewer System) on the books from 1990."  *See id.*  The Court has reviewed what Plaintiff refers to as "email communication [he has] had with [the] EPA," which is a June 2007 draft of the Municipal Separate Storm Sewer System Funding Document ("MS4 Funding Document") published by the NYSDEC.  Applying a liberal construction of Segreto's

submission, the Court concludes that Plaintiff alleges that Defendants are violating the MS4 Funding Document by dumping storm sewer water onto the Property, and thus, Segreto's request that the Court "uphold" the MS4 Funding Document is simply another way to request that the Court enjoin Defendants from dumping water onto the Property.

Because Plaintiff's submissions, which were docketed as motions, simply reassert the causes of actions that Segreto alleges in his Complaint and cannot be resolved by motion practice at this juncture, particularly where, as explained more fully below, Segreto has failed to state a valid cause of action, the Court respectfully recommends denying the motions in their entirety. As mentioned above, however, to the extent the arguments raised in these four submissions are responsive to Defendants' motions to dismiss, the Court takes them into consideration.

## A. <u>The NYSDEC's and the County's Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)</u>

Initially, the NYSDEC and the County move to dismiss the Complaint pursuant to Rule 12(b)(1) on the ground that this Court lacks subject matter jurisdiction to hear the claims against them. The NYSDEC argues that this Court lacks subject matter jurisdiction over several of Plaintiff's claims against it pursuant to the Eleventh Amendment of the United States Constitution. *See* NYSDEC Memo, 19-20. The County argues that federal question jurisdiction is lacking because Segreto asserts state law claims against it. *See* County Memo, 6-7.

i.   *Subject Matter Jurisdiction over Plaintiff's 42 U.S.C. § 1983 claims against the NYSDEC*

The court ruled in *Segreto I* that Plaintiff's claims for monetary damages pursuant to 42 U.S.C. § 1983 against the NYSDEC are barred by the Eleventh Amendment and thus dismissed such claims with prejudice for lack of subject matter jurisdiction. *Segreto I*, 2013 WL 572435, at *6. Nonetheless, Segreto has once again asserted the same claims against the NYSDEC. *See, e.g.*, Compl. 15 ¶ 19 ("I'm asking for punitive damages of 200% of the restoration costs from the NYSDEC by one false authority."). As the court explained in *Segreto I*, because the NYSDEC is an "arm of the state," the Eleventh Amendment, which precludes private citizens from maintaining an action in federal court against a State, unless the State has waived its sovereign immunity, bars Plaintiff's claims for monetary damages against the NYSDEC. *Segreto I*, 2013 WL 572435, at *6 (citing *Baker v. Dep't of Envtl. Conservation of State of N.Y.*, 634 F. Supp. 1460, 1462 (N.D.N.Y. 1986); *Salvador v. Lake George Park Comm'n*, No. 98-cv-1987, 2001 WL 1574929, at *2 (N.D.N.Y. Mar. 28, 2001), *aff'd sub nom. Salvador v. Adirondack Park Agency of State of New York*, 35 F. App'x 7 (2d Cir. 2002); *Estes-El v. Town of Indian Lake*, 954 F. Supp. 527, 536 (N.D.N.Y. 1997)). Accordingly, the court lacks subject matter jurisdiction over Segreto's § 1983 claims against the NYSDEC and thus respectfully recommends that all claims for monetary damages against the NYSDEC be dismissed with prejudice.

ii.      *Subject Matter Jurisdiction over Plaintiff's Claims Against the County*

The County argues that this Court lacks subject matter jurisdiction because Plaintiff's claims against it are state law claims "sounding essentially in common law tort," and thus, the Court lacks federal question jurisdiction. *See* County Memo, 6.

Federal question jurisdiction gives federal district courts jurisdiction over suits "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal question jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Adames v. Taju*, 80 F. Supp. 3d 465, 468 (E.D.N.Y. 2015) (internal quotation marks and citations omitted).

Liberally construing the Complaint, the Court determines that Segreto is alleging a Takings Clause violation against the County. The Complaint alleges violations of the Fifth Amendment and "Eminent Domain," *see* Compl., 4, and describes the County's actions of "[i]legal dumping" onto the Property as a manifestation of a "reckless indifference to [Plaintiff's] civil rights." *See* Compl., 8. Thus, interpreting the Complaint "to raise the strongest arguments that it suggests," the Court finds that Segreto has properly pleaded a federal question and thus respectfully recommends that the County's motion to dismiss on subject matter jurisdiction grounds be denied. *See Weixel*, 287 F.3d at 145-46.

## B. Defendants' Motions to Dismiss Pursuant to the Doctrine of *Res Judicata*

Defendants also move to dismiss the Complaint pursuant to the doctrine of *res judicata*. *Pro se* litigants, like represented litigants, are bound by the doctrine of *res judicata*. *Romaka v. H&R Block Mortg. Corp.*, No. 17-cv-7411, 2018 WL 4783979, at

*5 (E.D.N.Y. Sept. 30, 2018) (citation omitted).  The doctrine of res judicata "prevents a plaintiff from raising a claim that was or could have been raised in a prior suit." *McKithen v. Brown*, 481 F.3d 89, 104 (2d Cir. 2007).  To determine whether *res judicata* applies to preclude later litigation, a court must find that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (alterations in original) (internal quotation marks and citations omitted).

As to the first element, there was a final judgment on the merits in the prior action in this court, which resulted in the dismissal of Plaintiff's complaint with prejudice.  *See Lipin v. Hunt*, No. 14-cv-1081, 2015 WL 1344406, at *5 (S.D.N.Y. Mar. 20, 2015) ("The dismissal of a complaint with prejudice constitutes a final judgment on the merits[.]").  The second element is similarly satisfied, as both this action and the prior action involve Segreto and Defendants.  Accordingly, the only question is whether the issues raised in this lawsuit were or could have been raised in the prior action.

In determining whether issues raised in a subsequent lawsuit could have been raised in a prior action, New York courts[9] consider whether the second action

---

[9] New York law applies where, as here, a prior action was decided by a New York court.  *See Simmons v. Trans Express Inc.*, 355 F. Supp. 3d 165, 168 (E.D.N.Y. 2019) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 896 (1984)).

"involves the same 'transaction' or connected series of transactions as the earlier suit"—meaning that "the second cause of action requires the same evidence to support it and is based on facts that were also present in the first." *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (citation omitted); *see also Deng v. Aramark Educ. Grp., Inc.*, No. 04-cv-4536, 2006 WL 752826, at *4 (E.D.N.Y. Mar. 23, 2006), *aff'd sub nom. Yaohua Deng v. Aramark Educ. Grp., Inc.*, 253 F. App'x 84 (2d Cir. 2007) (internal quotation marks and citation omitted). A later claim that arises "out of the same factual grouping as an earlier litigated claim" is barred "even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Segreto I*, 2013 WL 572435, at *11 (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

i.   *Preclusion of claims against the Town and the County*

Plaintiff alleges that the Town and the County violated the Takings Clause of the Fifth Amendment by illegally dumping storm sewer water onto the Property without obtaining easements. *See* Compl., 4-5, 8. In *Segreto I*, the Court dismissed with prejudice Segreto's takings claims against the Town and the County, on the grounds that Plaintiff had "brought essentially the same action as in state court," and could have asserted a claim under the Takings Clause in the state court action. *Segreto I*, 2013 WL 572435, at *11. Segreto's allegations in the instant case are once again essentially the same as those in the state court actions and as those in *Segreto I*. Accordingly, Plaintiff's Takings Clause claims against the Town and the County

regarding wrongful flooding are barred by *res judicata*, and the Court respectfully recommends that they be dismissed with prejudice.

ii.    *Preclusion of claims against the NYSDEC*

Segreto alleges that the NYSDEC violated:  (i) the Takings Clause by allowing the Town and the County to illegally dump sewer water onto the Property, denying Plaintiff procedural due process and acting arbitrarily and capriciously in regulating the Property; (ii) the Fourth Amendment by conducting illegal searches of the Property; (iii) the Equal Protection Clause of the Fourteenth Amendment by issuing permits to Segreto's neighbors to build bulkheads on their properties, while denying Plaintiff's applications for such permits; and (iv) the Seventh Amendment and Eighth Amendments.  *See* Compl, 4-5, 8-11.

Segreto's allegations against the NYSDEC arise out of the same transactions underlying the previous lawsuit in this court.  Both lawsuits are premised on the NYSDEC's alleged role in flooding the Property and use of "false authority" to declare the Property "wetlands."  As discussed above, Plaintiff asserted many of the same causes of action in the previous action, which the court dismissed with prejudice.  *See Segreto I*, 2013 WL 572435, at *6, *14 (dismissing all claims for monetary damages against the NYSDEC arising under 42 U.S.C. § 1983, and dismissing claims for Fourth Amendment violations, finding that such claims were barred by the Eleventh Amendment); *Segreto II*, 2014 WL 737531, at *8 (dismissing claim that the NYSDEC had violated the Takings Clause by flooding the Property, based on its finding that the NYSDEC had not engaged in the alleged flooding itself); *Segreto III*, 2015 WL

729733 at *7-*8 (dismissing Equal Protection claim, finding that Plaintiff had not adequately pleaded that the NYSDEC had treated "similarly situated" neighbors differently than Segreto).  Further, any additional allegations against the NYSDEC raised for the first time in this lawsuit, such as Plaintiff's allegation that NYSDEC's removal of a storm-surge wall in August 2012 resulted in flooding from Hurricane Sandy, *see, e.g.*, Compl., 10 ¶ 15, could have been raised in the prior action as they all occurred prior to February 2014, when the court granted Segreto a second chance to file an amended complaint.

Ultimately, there is nothing substantively different about Plaintiff's Complaint in the present case other than his reliance on new legal theories, *e.g.*, his Seventh and Eighth Amendment claims.  New legal theories, however, do not amount to a new cause of action so as to defeat *res judicata*.  *See Marcotte v. City of Rochester*, 677 F. App'x 723, 725 (2d Cir. 2017) (citation omitted).  Further, Segreto cannot defeat *res judicata* preclusion by seeking new remedies—such as the removal of fines issued by the NYSDEC, *see* Compl., 14 ¶ 1—based on the same series of transactions at issue in the prior lawsuit.[10]  *See Burgos*, 14 F.3d at 790.  All of the allegations that form the crux of Plaintiff's complaint arise from the same series of transactions as those before the court in *Segreto I, Segreto II* and *Segreto III*.  As such, the claims asserted in the present action were, or could have been raised in the prior action and are

---

[10] The Court further notes that Plaintiff's request for a declaration that the Property is not wetlands as declared by the NYSDEC, *see* DE [25], is precluded by multiple state court actions, as discussed above.  *See e.g.*, Shterngel Decl. ¶ 11; Shterngel Decl., Ex D; Shterngel Decl., Ex. H.

precluded by *res judicata*. Accordingly, the Court respectfully recommends granting NYSDEC's motion to dismiss.[11]

### C. <u>The Town's Motion to Dismiss for Failure to State a Claim</u>

As a result of the foregoing adjudications, the only remaining claim is Segreto's claim against the Town regarding the sinkhole that appeared on the Property in April 2018. *See* Letter from Anthony J. Segreto, DE [37]; Response in Opposition by Anthony J. Segreto ("Pl. Opp"), DE [38], 1, 4. Plaintiff seeks injunctive relief for the Town to remove three pipes from the Property, including a broken pipe, that he believes created the sinkhole, and to fix the sinkhole. *See* Compl., 14 ¶ 6; 16. By letter filed on February 7, 2019, the Town informed the Court that it had repaired the broken pipe and the sinkhole. *See* DE [49]. Thus, Segreto's request for injunctive relief is moot.

Further, Plaintiff's allegations against the Town with respect to the pipes and sinkhole fail to "state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1940. Drawing all inferences in favor of Segreto, the Court is still unable to decipher what cause of action Plaintiff asserts against the Town and further finds that any conceivable cause of action would arise under state law, and thus this Court would lack subject matter jurisdiction, given the Court's recommendation above that all federal claims be dismissed. While Segreto alleges that "President Trump's Executive Order" supports his "Basic Position," *see* Compl.,

---

[11] Because *res judicata* has a broader preclusive effect than collateral estoppel, the Court does not address the NYSDEC's and the County's arguments regarding collateral estoppel. *See Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 351 (E.D.N.Y. 2010).

16, such a conclusory allegation about an unspecified Executive Order is insufficient to raise a federal question sufficient to confer subject matter jurisdiction. Accordingly, the Court respectfully recommends granting the Town's motion to dismiss Plaintiff's claim regarding the three pipes and the sinkhole.

However, courts should "freely" give plaintiffs leave to amend "when justice so requires," *see* Fed. R. Civ. P. 15(a)(2), and leave to amend is especially encouraged for *pro se* plaintiffs, whose complaints are to be liberally construed. *See Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) ("A *pro se* complaint is to be read liberally . . . Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.") (citations omitted); *Dadgostari v. Katharine Gibbs Sch., Inc.*, 67 F. App'x 38, 40 (2d Cir. 2003) (modifying judgment to give *pro se* plaintiff opportunity to amend). Accordingly, the Court respectfully recommends that Segreto be given leave to amend his Complaint to assert a cause of action against the Town with respect to the three pipes and the sinkhole on the Property.

## IV. CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Plaintiff's motions be denied and that Defendants' motions to dismiss be granted, and that Segreto's Complaint be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), the doctrine of *res judicata* and Fed. R. Civ. P. 12(b)(6). The Court further recommends that all of Plaintiff's claims against Defendants be dismissed with prejudice, with the exception of Segreto's claim against the Town regarding the three pipes and the

sinkhole on the Property, which the Court recommends be dismissed without prejudice and with leave to amend.

## V.  OBJECTIONS

A copy of this Report and Recommendation is being served on Defendants by electronic filing on the date below.  Defendants are directed to serve a copy of this Report and Recommendation on Plaintiff and promptly file proof of service by ECF. Any objections must be filed with the Clerk of the Court within 14 days.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:      Central Islip, New York
            August 7, 2019

                              s/ Steven I. Locke
                              STEVEN I. LOCKE
                              United States Magistrate Judge